# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **TY WILLIAMS, individually and on behalf of all others similarly situated,** | * |
| | * |
| **Plaintiff,** | * |
| v. | Case No.: GJH-19-1780 |
| | * |
| **POTOMAC FAMILY DINING GROUP OPERATING COMPANY, LLC,** | * |
| | * |
| **Defendant.** | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Ty Williams ("Plaintiff") brings this action under the Americans with Disabilities Act ("ADA") against Defendant Potomac Family Dining Group Operating Company, LLC ("Defendant"), which owns and operates a number of Applebee's Grill & Bar restaurants. ECF No. 1. Plaintiff alleges that the parking facilities at several of Defendant's restaurants do not comply with the ADA and accordingly seeks declaratory and injunctive relief personally and as the representative of a class. Defendant has moved to dismiss the complaint and to strike Plaintiff's class allegations. ECF No. 8. A hearing is not necessary. *See* Loc. R. 105.6 (D. Md.). For the following reasons, Defendant's motion will be granted in part and denied in part and Plaintiff will be granted leave to amend the Complaint.

## I. BACKGROUND[1]

Plaintiff is a resident of Gaithersburg, Maryland who uses a wheelchair for mobility as a

---

[1] Unless otherwise stated, these facts are taken from Plaintiffs' Complaint, ECF No. 1, and are presumed to be true.

result of a 2015 spinal injury. ECF No. 1 ¶ 20. Defendant is a limited liability company that owns 69 Applebee's Grill & Bars throughout Maryland, Virginia, Pennsylvania, West Virginia, and North Carolina. *Id.* ¶ 21. Plaintiff alleges that, within the last year, he visited Defendant's facility located at 21048 Frederick Road in Germantown, Maryland, "where he experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking area and other ADA accessibility violations." *Id.* ¶ 23. Specifically, "[t]he surfaces of one or more purportedly accessible curb ramps had slopes exceeding 8.33%." *Id.* ¶ 31. "Despite this difficulty and risk," Plaintiff asserts that he "plans to return to Defendant's facilities, at least six times a year." *Id.* ¶ 24. Plaintiff states that "[i]t is convenient for him to stop by regularly to continue to test Defendant's facilities' compliance with the ADA because [he] regularly dines at Applebee's when he is shopping at the nearby Walmart or Target"; that he "likes to order whatever the half price appetizers are that day"; and that he "intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of the ADA." *Id.*

The slope of the curb ramps at Defendant's Germantown facility was identified by investigators acting on Plaintiff's behalf. *Id.* ¶ 31. The investigators also visited and inspected six other facilities "owned, controlled, and/or operated by Defendant" in Maryland, Virginia, and Pennsylvania, and found additional ADA violations among "purportedly accessible" features of the parking facilities at those locations. *Id*. Specifically, curb ramps at two facilities in addition to the Germantown location had slopes exceeding 8.33 percent; accessible parking spaces at four facilities had slopes exceeding 2.1 percent; and two facilities had "access aisles" with slopes exceeding 2.1 percent.[2] *Id.* Though Plaintiff does not intend to visit any of these other facilities, he states that "[t]he fact that individuals with mobility-related disabilities are denied full and

---

[2] An "access aisle" is a designated area adjacent to an accessible parking space intended to be used for ramps and other accessibility features. *See Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 474 n.1 (3d Cir. 2018).

equal access to numerous of Defendant's facilities, and the fact that each of these facilities denies access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, is caused by Defendant's systemic disregard for the rights of individuals with disabilities." *Id.* ¶ 32. In general, Plaintiff claims that "Defendant's systemic access violations demonstrate that Defendant either employ[s] policies and practices that fail to design, construct, and alter their facilities so that they are readily accessible and usable and/or that Defendant employs maintenance and operational policies and practices that are unable to maintain accessibility." *Id.* ¶ 33. Plaintiff also asserts that Defendants' "policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of its facilities" are "centralized" and the product of "centralized decision making." *Id.* ¶¶ 5, 29–30.

To remedy these violations, "Plaintiff seeks an injunction to remove the [access] barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, inaccessibility to affect Defendant's network of facilities." *Id.* ¶ 35. Plaintiff also brings claims and seeks relief as the representative of a class pursuant to Federal Rule of Civil Procedure 23(b)(2). *Id.* ¶ 36. Plaintiff maintains that "Defendant has discriminated against Plaintiff and the class in that Defendant has [failed] to make its facilities fully accessible to, and independently usable by, individuals who use wheelchairs" in violation of the ADA. *Id.* ¶ 52. "Unless Defendant is restrained from continuing its ongoing and continuous course of conduct," Plaintiff concludes, "Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class." *Id.* ¶ 54.

Defendant filed a Motion to Dismiss Plaintiff's Complaint and Motion to Strike Class Claims, ECF No. 8, and an accompanying Memorandum in Support, ECF No. 8-1, on August 12, 2019. Defendant maintains that Plaintiff lacks standing to bring his individual claims and that his

class claims should be stricken because his proposed class cannot meet the requirements of Federal Rule of Civil Procedure 23. ECF No. 8-1 at 1–2.[3] Plaintiff filed an Opposition to Defendant's Motion on August 26, 2019, ECF No. 10, and Defendant filed a Reply Brief on September 9, 2019, ECF No. 11.

## II. STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiff's individual claims pursuant to Rule 12(b)(1), asserting that the Court lacks subject matter jurisdiction because Plaintiff lacks standing. "A district court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). "The burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Constr.*, 776 F.3d 271, 272 (4th Cir. 2015). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Defendant has also moved to strike Plaintiff's class claims on the grounds that Plaintiff lacks standing to serve as a class representative and that the class as proposed cannot meet the requirements of Rule 23. The proper standard of review to apply in evaluating Defendant's motion is a matter of dispute among the parties that necessitates examination of

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

applicable case law and secondary authorities. The Court will address both issues of individual and class standing before turning to the requirements of class certification pursuant to Rule 23.

## III. DISCUSSION

### A. Individual Standing

Defendant argues that Plaintiff lacks an injury in fact sufficient for standing to pursue claims as an individual because he "suffered no injury and is at no risk of any future injury." ECF No. 8-1 at 7. To establish a case or controversy necessary to invoke federal jurisdiction, a plaintiff "bears the burden of establishing the three 'irreducible minimum requirements' of Article III standing: (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (quoting *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013)). When a plaintiff seeks prospective declaratory and injunctive relief, allegations of past injury alone cannot establish a present case or controversy; the plaintiff must also "plausibly alleg[e] 'a real and immediate threat of repeated injury'" in the future. *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 455 (4th Cir. 2017) (quoting *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991)). This burden is not particularly demanding in ADA cases. "[W]hen an ADA plaintiff has alleged a past injury at a particular location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury" required to seek prospective relief. *Id.* at 455.

In *Nanni v. Aberdeen Marketplace*, the Fourth Circuit found that a plaintiff who uses a wheelchair had established sufficient injury in fact to seek an injunction against a highway rest

stop shopping center for its alleged violations of the ADA. *See id.* at 448–49. The plaintiff alleged that he had visited the facility three to four times in the past three years because it was an ideal place to rest during trips from his home in Delaware to Baltimore and Washington, D.C. *Id.* at 449. During those visits, however, the plaintiff "encountered noncompliant parking spaces that caused him difficulty exiting and entering his vehicle because of the extra care needed to avoid a fall," as well as "other barriers to access" that included "curb ramps and a sidewalk ramp, which required him to exercise extra care." *Id.* at 455 (internal quotation marks omitted). The court found that those injuries were sufficiently "concrete, particularized, and actual" to qualify as past injury and explained that "a past injury is sufficiently pleaded for purposes of an ADA claim where a disabled individual who requires a wheelchair for mobility alleges that he has personally encountered noncompliant architectural barriers and describes how those barriers caused him harm." *Id.* As for future injury, the court found that the plaintiff's allegation that he intended "to make additional visits" to the facility "on his journeys to and from Baltimore and Washington" was sufficiently plausible to confer standing for injunctive relief. *Id.* at 449, 456. The plaintiff was not required to state the precise dates of future trips, to identify his reasons for returning to the facility, or to identify by name the stores he intended to visit. *Id.* at 456.

Plaintiff here has likewise alleged an injury in fact sufficient to support his request for prospective relief. Describing his past injury, Plaintiff asserts that within the last year, he visited Defendant's restaurant at 21048 Frederick Road in Germantown, Maryland, where he "experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking area," among other alleged ADA violations. ECF No. 1 ¶ 23. The excessive slopes that Defendant was forced to navigate in his wheelchair "significantly impeded" his "ability to access and safely use Defendant's facilities." *Id.* ¶ 25. Under *Nanni*, Plaintiff need not allege more to

6

make out a past injury. The "architectural barriers" that he allegedly encountered are "precisely the types of systemic discrimination the ADA seeks to erase." *Nanni*, 878 F.3d at 455 (citing 42 U.S.C. § 12182(a)). "By alleging that [Plaintiff] visited [Defendant's facility] and personally encountered architectural barriers to access, the Complaint pleads past injuries that are concrete, particularized, and actual." *Id.* Plaintiff has also made sufficient allegations to demonstrate future injury. Plaintiff alleges that he plans to return to the restaurant "at least six times a year" and that he "regularly dines" there "when he is shopping at the nearby Walmart or Target." ECF No. 1 ¶ 24.[4] He specifically "likes to order whatever the half price appetizers are that day." *Id.* Those allegations are "entirely plausible," *Nanni*, 847 F.3d at 456, particularly given that Plaintiff resides in nearby Gaithersburg, Maryland, ECF No. 1 ¶ 20. Plaintiff therefore has standing to seek relief for the injury he allegedly suffered at Defendant's restaurant in Germantown.

**B. Class Standing and the "Disjuncture Problem"**

In addition to challenging Plaintiff's standing to bring an action for his own injuries, Defendant also contends that Plaintiff lacks standing to seek an injunction that applies to alleged ADA violations at all of Defendant's locations. In support of this argument, Defendant cites case law stating that a plaintiff and proposed ADA class representative has standing to seek relief that applies to locations the plaintiff has not visited only if the Complaint identifies a "common policy or common architectural design that facilitates consistent violations of the ADA." ECF No. 8-1 at 12. For example, an Ohio district court in *Timoneri v. Speedway, LLC* rejected the argument of a plaintiff and proposed class representative that "whether he can challenge [the defendant's] policies as they apply to all of its locations is determined by application of Fed. R.

---

[4] Plaintiff also alleges that "he intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of the ADA." ECF No.1 ¶ 24. Because Plaintiff has standing independent of any role as a "tester," the Court will not further address this aspect of Plaintiff's allegations except to note that a plaintiff's status as an ADA tester does not strip him of standing to challenge alleged ADA violations. *See Nanni*, 878 F.3d at 457.

7

Civ. P. 23, not by consideration of whether he visited the other of [the defendant's] locations." 186 F. Supp. 3d 756, 761 (N.D. Ohio 2016) (internal quotation marks and alterations omitted). The court instead accepted the defendant's argument that a plaintiff must allege "discrimination arising from a common architectural design or common policy." *Id.* In response to Defendant's citation of *Timoneri* and similar cases, Plaintiff cites cases accepting the position that *Timoneri* rejected. ECF No. 10 at 14–18. In *Garner v. VIST Bank*, for example, the court held that an ADA plaintiff alleging that all of a bank's ATMs were inaccessible was "required only to show that he has individual standing to bring his claim with respect to the [specific] ATM" that he had used. Civil Action No. 12–5258, 2013 WL 6731903, at *9 (E.D. Pa. Dec. 20, 2013). Whether the plaintiff could "properly challenge [the defendant's] polices as they apply to [the defendant's] entire ATM system as a named plaintiff in a class action is not an issue of standing, but one of class certification" to be resolved "at the class certification stage." *Id.*

The parties' competing arguments, and the holdings of the cases they cite, illustrate the two competing approaches that courts have taken to what a leading treatise on class actions labels "the disjuncture problem." 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed. June 2019 update). As the treatise describes, while there is a fundamental principle of justiciability that "[t]here cannot be a disjuncture between the harm that the plaintiff suffered and the relief that she seeks," a proposed "class representative may seek to litigate harms not precisely analogous to the ones she suffered but harms that were nonetheless suffered by other class members." *Id.* Confronted with this situation, some courts follow a "standing approach," under which a proposed representative lacks standing to pursue relief for injuries suffered by proposed class members that may differ from the named plaintiff's own. *Timoneri* and other cases that Defendant cites take this path. Other courts follow the "class certification" approach,

holding that "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Id.* The *Garner* decision, among others Plaintiff cites, followed this course. *See id.* n.23 (identifying *Garner* as an example of the class certification approach).

This case presents at least some degree of disjuncture. Plaintiff alleges that he suffered an injury due to an excessively sloped curb ramp at one of Defendant's restaurants, but seeks relief for the injuries of other proposed class members who have encountered excessively sloped curb ramps, parking spaces, or access aisles at different locations that Plaintiff has no intention of visiting. The Court therefore must apply one of the competing approaches to the disjuncture problem. For multiple reasons, the Court will follow the class certification approach. First, while the Fourth Circuit does not appear to have weighed in on the disjuncture problem, at least two district courts in this circuit have embraced this approach. *See Hendrick v. Caldwell*, 232 F. Supp. 3d 868, 882 (W.D. Va. 2017), *vacated on other grounds by Manning v. Caldwell for City of Roanoke*, 930 F.3d 264 (4th Cir. 2019); *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 4611570, at *3 (E.D. Va. 2016). The U.S. Court of Appeals for the Ninth Circuit has also adopted the approach in a persuasively reasoned opinion, *see Melendres v. Arpaio*, 784 F.3d 1254, 1261–62 (9th Cir. 2015), and the Tenth Circuit has endorsed similar reasoning, *see Colo. Cross–Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1212–13 (10th Cir. 2014). Practical reasons also counsel in this direction. The requirements of Rule 23(a) "are designed precisely to address concerns about the relationship between the class representative and the class." 1 Rubenstein § 2:6. That renders it "a more appropriate tool to utilize" in addressing the disjuncture problem than the standing doctrine, which "is primarily

9

concerned with ensuring that a real case or controversy exists." *Id.* Additionally, turning to Rule 23 allows courts to avoid the constitutional adjudication necessary in evaluating Article III standing. *See id.* Having chosen to use the class certification approach, the Court now turns to Rule 23, which Defendant also argues requires dismissal of Plaintiff's class claims.

### C. Rule 23 Requirements

Defendant contends that regardless of Plaintiff's standing to serve as a class representative, Plaintiff's class claims should be stricken because Plaintiff fails to plead a certifiable class. *See* ECF No. 8-1 at 12–13. Plaintiff responds that Defendant's motion is premature and that the Court should defer consideration of Rule 23 until the class certification stage. ECF No. 10 at 19–22. Review of relevant authority, however, reveals that standards exist to evaluate motions to strike a complaint's class claims.[5] Beginning with the relevant rules, Rule 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." While the rule does not specify when such an order may be issued, the Supreme Court has instructed that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). That principle is reflected by Rule 23(d)(1)(D), which provides that in conducting an action under Rule 23, a court may issue orders

---

[5] Defendant has styled its filing as "Defendant's Motion to Dismiss Plaintiff's Complaint and Motion to Strike Class Claims." ECF No. 8. The motion and supporting memorandum state that their class component is filed pursuant to Federal Rules of Civil Procedure 23(c)(1) and 23(d)(1)(D) "for failure to plead a viable class." *Id.*; ECF No. 8-1 at 6. In his Opposition, Plaintiff cites case law noting Rule 12(f) in considering motions to strike class allegations. *See* ECF No. 10 at 7, 16–17. Review of this case law and secondary authorities, however, reveals that courts generally have not used doctrine applicable to traditional uses of Rule 12(f) in addressing motions to strike class allegations. *See* 5C Arthur R. Miller et al., Federal Practice & Procedure § 1383. This suggests an understanding among courts adjudicating putative class actions that defendants often label early attempts to thwart class claims as "motions to strike" without intending to seek a Rule 12(f)-based ruling. For these reasons, the Court will not consider Defendant's motion under Rule 12(f) and will instead apply the Rule 23 framework that Defendant has cited.

that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Relying on these authorities, several circuits, including the Fourth Circuit in an unpublished table decision, have found that Rule 23 permits defendants to file preemptive motions to deny certification before discovery is completed. *See Richardson v. Bledsoe*, 829 F.3d 273, 288–89 (3d Cir. 2016); *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939–41 (9th Cir. 2009); *Strange v. Norfolk & W. Ry.*, No. 85–1929, 1987 WL 36160, at *3 (4th Cir. Jan. 12, 1987) (unpublished table decision); *see also Stanley v. Central Garden & Pet Corp.*, 891 F. Supp. 2d 757, 769 (D. Md. 2012); *Ross-Randolph v. Allstate Ins. Co.*, No. DKC 99–3344, 2001 WL 36042162, at *4 (D. Md. May 11, 2001).

Courts have also coalesced around a broad understanding of when granting such motions is proper, holding that class allegations should generally be struck before the completion of discovery only when it is apparent from the face of the complaint that "the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008); *John v. Nat. Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4th Cir. 1978) (identifying "the normal practice that requires the district court to consider more than merely the allegations contained in the complaint in cases in which the complaint on its face does not justify dismissal of the class aspect"). The guidelines for making this assessment are provided by the familiar standard of review for motions to dismiss under Rule 12(b)(6). *Blihovde v. St. Croix Cty.*, 219 F.R.D. 607, 613–14 (W.D. Wis.

2003); *see also Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 655 (D. Nev. 2009). To be clear, the plaintiff retains the ultimate burden of demonstrating that the requirements for certification are met in a class action. *See Vinole*, 571 F.3d at 940. But when a defendant files a pre-discovery challenge to class certification "on the basis of the allegations in the complaint only," the standard of review "is the same as a motion to dismiss for failure to state a claim." *Blihovde*, 219 F.R.D. at 614. In other words, a motion to dismiss a complaint's class allegations should be granted when it is clear from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification because the plaintiff has "fail[ed] to properly allege facts sufficient to make out a class" or "could establish no facts to make out a class." *Bessette v. Avco Fin. Servs.*, 279 B.R. 442, 450 (D.R.I. 2002). Imposing this relatively low bar to proceed to discovery is consistent with the principle that "a ruling on class certification should normally be based on 'more information than the complaint itself affords.'" *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484 (D.S.C. 1991) (quoting *Doctor v. Seaboard Coast Lines R.R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976)).

In general, to state a claim that survives a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific" inquiry, drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570). When performing this inquiry, the Court accepts "all well-

pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court need not, however, accept unsupported legal conclusions, *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009).

With this standard in mind, the Court turns to the requirements of Rule 23 that Plaintiff ultimately must meet. "Rule 23(a) requires that [a] prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (citing Fed. R. Civ. P. 23(a)). "[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting Fed. R. Civ. P. 23(a)(1)). "Commonality requires that 'there are questions of law or fact common to the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(2)). For this requirement to be met, the proceeding must not only raise common questions, but must also be able "to generate common *answers* apt to drive the resolution of the litigation." *EQT Prod. Co.*, 764 F.3d at 360 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart*, 255 F.3d at 146 (quoting *Falcon*, 457 U.S. at 156). Finally, "[r]epresentativeness requires that the class representatives 'will fairly and adequately protect the interests of the

class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(4)).

In addition to satisfying the requirements of Rule 23(a), "the class action must fall within one of the three categories enumerated in Rule 23(b)." *EQT Prod. Co.*, 764 F.3d at 357 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). Plaintiff here asserts class claims pursuant to Rule 23(b)(2). ECF No. 1 ¶¶ 9, 36–41. "Rule 23(b)(2) authorizes class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *EQT Prod. Co.*, 764 F.3d at 357 (quoting Fed. R. Civ. P. 23(b)(2)). "As the Supreme Court has instructed, '[t]he key to the (b)(2) class is the indivisible nature of the . . . remedy warranted.'" *Id.* (alteration in original) (quoting *Dukes*, 564 U.S. at 360). "Certification under this provision is appropriate 'only when a single injunction or declaratory judgment would provide relief to each member of the class.'" *Id.* (quoting *Dukes*, 564 U.S. at 360). "It is [the plaintiff's] burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied.'" *Id.* (citing *Dukes*, 564 U.S. at 351).

Applying these standards to Plaintiff's class allegations requires reviewing the substantive law at issue in the Complaint, which claims that Defendant has violated Title III of the ADA and its implementing regulations. "Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005) (citing 42 U.S.C. § 12182(a)). It specifically mandates, among other requirements, that "place[s] of public accommodation" must "remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), and must "design and construct facilities for first occupancy later

than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities," with exceptions not relevant here, *id.* § 12183(a)(1). "Place[s] of public accommodation" include "restaurant[s], bar[s], or other establishment[s] serving food or drink." *Id.* § 12181(7)(B). A party alleging violations of these provisions may sue for prospective injunctive relief. *Id.* § 12188(a). "Where appropriate," an injunction may require "modification of a policy." *Id.* § 12188(a)(2). Plaintiff alleges that Defendant has violated 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(iv), and 12183(a), and accordingly seeks injunctive relief under § 12188(a). ECF No. 1 ¶¶ 7–8, 43–55. Plaintiff also alleges that Defendant violated a provision of the ADA's implementing regulations, 28 C.F.R. § 36.211, which mandates that "[a] public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." 28 C.F.R. § 36.211(a); *see* ECF No. 1 ¶ 45.

> Plaintiff's proposed Rule 23(b)(2) nationwide class is defined as follows:
>
> All persons with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any Potomac Family Dining Group Operating Company, LLC location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendant's failure to comply with the ADA's accessible parking and path of travel requirements.

ECF No. 1 ¶ 36. Defendant maintains that Plaintiff cannot meet the commonality, typicality, and adequacy requirements of Rule 23(a), nor the requirements of Rule 23(b)(2). ECF No. 8-1 at 13–20; ECF No. 11 at 9–15. Because the Court agrees that the proposed class lacks sufficient commonality to satisfy Rule 23(a)(2), it need not reach Defendant's other arguments.

"To establish commonality, the party seeking certification must 'demonstrate that the class members have suffered the same injury' and that their claims 'depend upon a common contention.'" *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014) (quoting

15

*Dukes*, 564 U.S. at 350); *see also Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 700 (4th Cir. 2011). "Commonality 'does not mean merely that [class members] have all suffered a violation of the same provision of law.'" *Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 408 (D. Md. 2014) (alteration in original) (quoting *Dukes*, 564 U.S. at 350). The chief issue with the class definition that Plaintiff proposes here is the overly broad range of potential ADA violations that it purports to reach. By extending the definition to persons who suffered injury "due to Defendant's failure to comply with the ADA's accessible parking and *path of travel* requirements," Plaintiff proposes a class with members who have suffered different injuries from those Plaintiff alleges, namely those involving "path of travel" requirements that the Complaint does not specifically allege were violated. ECF No. 1 ¶ 36 (emphasis added). In fact, the Complaint does not offer a definition of "path of travel," nor an explanation of what it means in using the term. Though one paragraph cites 28 C.F.R. § 36.211 for the assertion that "the accessible features of Defendant's facilities, which include the parking lots and paths of travel, are required to be maintained so that they are readily accessible to and usable by individuals with mobility disabilities," that regulation does not discuss paths of travel. ECF No. 1 ¶ 45.

Review of other provisions of the ADA's implementing regulations, however, reveals that "path of travel" is a term of art with a specific definition. The phrase is discussed most comprehensively at 28 C.F.R. § 36.403, titled "Alterations: Path of travel," a provision that establishes requirements for entities that make "[a]n alteration that affects or could affect the usability of or access to an area of a facility that contains a primary function," defined as "a major activity for which the facility is intended." 28 C.F.R. § 36.403(a)(1), (b). The regulation directs in part that the alteration "shall be made so as to ensure that . . . the path of travel to the altered area and the restrooms, telephones, and drinking fountains serving the altered area, are

readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." *Id.* § 36.403(a)(1).[6] "Path of travel" is specifically defined as "a continuous, unobstructed way of pedestrian passage by means of which the altered area may be approached, entered, and exited, and which connects the altered area with an exterior approach (including sidewalks, streets, and parking areas), an entrance to the facility, and other parts of the facility." *Id.* § 36.403(e)(1). Importantly, features of a facility constituting an "accessible path of travel may consist of walks and sidewalks, curb ramps and other interior or exterior pedestrian ramps; clear floor paths through lobbies, corridors, rooms, and other improved areas; parking access aisles; elevators and lifts; or a combination of these elements." *Id.* § 36.403(e)(2). "Path of travel" also includes "the restrooms, telephones, and drinking fountains serving the altered area." *Id.* § 36.403(e)(3).

Two conclusions are apparent from these provisions. First, accessible "path of travel" obligations arise for facility owners when they make qualifying alterations to their facilities; they do not generally apply to all owners of public accommodations. Second, and importantly, physical aspects of altered facilities that may fall under the broad definition of the term range beyond parking lot and sidewalk features to lobbies, corridors, and rooms, as well as elevators and lifts. *Id.* § 36.403(e)(2). Both propositions are fatal to Plaintiff's proposed class. Even setting aside the alteration element, a class that reaches individuals injured by Defendant's failure to meet path of travel requirements sweeps far broader than the parking area violations that the Complaint alleges. *See* ECF No. 1 ¶¶ 32, 34. It would presumably include, for example,

---

[6] 42 U.S.C. § 12183(a)(2) – a provision that the Complaint does not specifically assert that Defendant violated – uses very similar language to establish a duty to ensure that "a facility or part thereof that is altered" maintains a "path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area" that is "readily accessible to and usable by individuals with disabilities." Because "path of travel" is not defined by statute, and because Plaintiff does not assert that Defendant violated this provision, the Court focuses on the regulatory definitions of the phrase.

individuals who visited facilities with ADA-compliant parking lots but who allege that an interior elevator was inaccessible. The Complaint asserts no such injuries, either to Plaintiff at the Germantown facility or at the other facilities Plaintiff's investigators examined. That creates a substantial "disjuncture," *see* 1 Rubenstein § 2:6, producing a proposed class with members who have not all suffered the same injury. Stated differently, many class members would have injuries that the Complaint does not allege, except perhaps in asserting general violations of Title III. *See* ECF No. 1 ¶¶ 42–55. But commonality requires more than that the proposed class members "suffered a violation of the same provision of law.'" *Bond*, 296 F.R.D. at 408 (quoting *Dukes*, 564 U.S. at 350); *cf. Mielo*, 897 F.3d at 487–90 (finding a failure of commonality where proposed class representatives only claimed injury from inaccessible parking lots but the proposed class would include any persons who "encountered accessibility barriers at any Steak 'n Shake restaurant where Defendant owns, controls and/or operates the parking facilities").

Reinserting the alteration component of the path of travel definition only strengthens the conclusion that Plaintiff's proposed class fails to satisfy the commonality requirement. The Complaint makes no specific allegations about alterations of Defendant's facilities, instead stating merely that "Defendant's facilities were altered, designed, or constructed after the effective date of the ADA." ECF No. 1 ¶ 43. There is therefore no way to identify from the Complaint which of Defendant's facilities would be subject to path of travel requirements, nor can the Complaint fairly be read to suggest that investigating the dates of any alterations would be a topic for discovery. That raises not only a commonality problem, but also a potential issue of "ascertainability," the "implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). In any event, it is plain from the face of the Complaint that Plaintiff

has "fail[ed] to properly allege facts sufficient to make out a class." *Bessette*, 279 B.R. at 450. Even taking all of the Complaint's allegations as true, and drawing all reasonable inferences from those allegations, the proposed class definition would not satisfy the commonality requirement of Rule 23(a)(2) because of the inclusion of injuries suffered due to violations of "path of travel requirements." ECF No. 1 ¶ 36. The Court will therefore grant Defendant's Motion with respect to the Complaint's class claims, but will do so without prejudice to Plaintiff's right to amend the Complaint to reformulate the proposed class definition. *See Ostrzenski v. Siegel*, 177 F.3d 245, 252–53 (4th Cir. 1999).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Complaint and Motion to Strike Class Claims, ECF No. 8, will be granted only with respect to the class claims, and without prejudice to Plaintiff's right to amend the Complaint. Defendant's Motion will be denied in all other respects. A separate Order shall issue.

Date: <u>October 21, 2019</u>　　　　　　　　　　　　　__/s/_____
　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge