**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **TY WILLIAMS, individually and**<br>**on behalf of all others similarly situated,** | * |
| | * |
| **Plaintiff,** | |
| | * |
| **v.** | *          **Case No.: GJH-19-1780** |
| | * |
| **POTOMAC FAMILY DINING GROUP** | * |
| **OPERATING COMPANY, LLC,** | |
| | * |
| **Defendant.** | |
| | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Ty Williams  brings this action under the Americans with Disabilities Act ("ADA") against Defendant Potomac Family Dining Group Operating Company, LLC , which owns and operates a number of Applebee's Grill & Bar restaurants. Plaintiff alleges that the parking facilities at several of Defendant's restaurants do not comply with the ADA and accordingly seeks declaratory and injunctive relief personally and as the representative of a proposed class. On October 21, 2019, the Court granted in part and denied in part Defendant's Motion to Dismiss Plaintiff's Complaint and Motion to Strike Class Claims, dismissing the class component of Plaintiff's Complaint but denying the Motion otherwise. ECF Nos. 16, 17. Plaintiff has now moved for leave to amend the Complaint and Defendant has opposed the Motion. ECF Nos. 23, 24. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the following reasons, Plaintiff's Motion for Leave will be granted in part and denied in part.

## I.     BACKGROUND[1]

Plaintiff is a resident of Gaithersburg, Maryland who uses a wheelchair for mobility as a result of a 2015 spinal injury. ECF No. 23-2 ¶ 12. Defendant, a limited liability company with its principal place of business in Herndon, Virginia, owns 59 Applebee's Grill & Bars throughout Maryland, Virginia, Pennsylvania, West Virginia, and North Carolina. *Id.* ¶ 14. Plaintiff alleges that, within the last year, he visited Defendant's facility located at 21048 Frederick Road in Germantown, Maryland, "where he experienced unnecessary difficulty and risk of physical harm exiting and entering his vehicle, such that extra care was needed to avoid falling and to safely traverse the area, due to excessive slopes in a purportedly accessible parking area and other ADA accessibility violations. *Id.* ¶ 16. Specifically, "[t]he surfaces of one or more purportedly accessible curb ramps had run slopes exceeding 9.8%." *Id.* ¶ 27(a).

"Despite this difficulty and risk," Plaintiff asserts that he "plans to return to Defendant's facilities at least six times a year." *Id.* ¶ 17. Plaintiff states that "[i]t is convenient for him to stop by regularly to continue to test Defendant's facilities' compliance with the ADA because [he] regularly dines at Applebee's when he is shopping at the nearby Walmart or Target"; that he "likes to order whatever the half price appetizers are that day"; and that he "intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of the ADA." *Id.* Nonetheless, Plaintiff asserts that he "will be deterred from returning to and fully and safely accessing Defendant's facilities due to the discrimination on the basis of disability he has previously encountered there." *Id.* ¶ 19.

The allegedly excessive slope of the curb ramps at Defendant's Germantown facility was

---

[1] Unless otherwise stated, these facts are taken from Plaintiff's proposed First Amended Nationwide Class Action Complaint, ECF No. 23-2, and are presumed to be true. *See AIG Prop. Cas. Co. v. Eaton Corp.*, No. JKB-18-1853, 2019 WL 1586253, at *1 n.1 (D. Md. Apr. 12, 2019) (citing *Perkins v. United States*, 55 F.3d 910, 916 (4th Cir. 1995)).

2

identified by investigators acting on Plaintiff's behalf. *Id.* ¶ 27. The investigators also visited and inspected six other facilities "owned, controlled, and/or operated by Defendant" in Maryland, Virginia, and Pennsylvania, and found additional "accessibility violations" in parking areas. *Id.* Specifically, the surfaces of one or more curb ramps, parking spaces, and access aisles, each of which were "purportedly accessible," had "run slopes" exceeding certain percentages.[2] *Id.* ¶¶ 27(b)–27(g). Plaintiff asserts that these "violations . . . are illustrative of the fact that Defendant's existing policies, practices, or procedures, are discriminatory, unreasonable, and inadequate, and routinely result in accessibility violations." *Id.* ¶ 27.

Though Plaintiff does not express an intent to visit any of these other facilities, he states that "[t]he fact that individuals with mobility-related disabilities are denied full and equal access to Defendant's numerous facilities, and the fact that each of these facilities deny access by way of inaccessible parking facilities, is evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, is caused by Defendant's systemic disregard for the rights of individuals with disabilities." *Id.* ¶ 28. In general, Plaintiff claims that "Defendant's systemic access violations demonstrate that Defendant's policies, practices, or procedures fail to maintain its facilities so that they remain readily accessible and usable by wheelchair users." *Id.* ¶ 29. Plaintiff asserts that "absent a change in Defendant's existing policies, practices, or procedures, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated." *Id.* ¶ 30.

Plaintiff further alleges that as an Applebee's franchisee, Defendant utilizes standards manuals issued by the franchisor that include instructions, requirements, standards, specifications, and procedures concerning management, administration, and maintenance of each restaurant's exterior, parking lot, patio, sidewalks, and signage. *Id.* ¶ 23. According to these

---

[2] An "access aisle" is an accessible pedestrian space between parking spaces or other accessible features of a facility that provides clearance for appropriate use of the accessible feature. *See* 28 C.F.R. pt. 36 app. D, § 3.5.

materials, Plaintiff alleges, each of Defendant's facilities, including the exterior, are inspected at least biannually. *Id.* ¶ 24. Plaintiff also makes allegations about Defendant's management structure, alleging that "[c]ompliance with Defendant's centralized policies, practices, or procedures with regard to the maintenance and operation of its[]facilities originates with Defendant's Regional Director, who supervises several Area Directors, each Area Director in turn charged with supervising a small group [of] Defendant's restaurants  within a geographic area." *Id.* ¶ 25.

To remedy Defendant's alleged accessibility violations, "Plaintiff seeks an injunction to remove the [access] barriers currently present at Defendant's facilities and an injunction to modify its existing policies, practices, or procedures that have created or allowed, and will create or allow, inaccessibility to affect Defendant's network of facilities." *Id.* ¶ 32. Plaintiff also seeks to represent a class pursuant to Federal Rule of Civil Procedure 23(b)(2), defined to include wheelchair users with qualifying mobility disabilities who encountered accessibility barriers in Defendant's parking areas due to its alleged failure to comply with ADA slope regulations. *Id.* ¶ 36. Plaintiff maintains that Defendant has violated the ADA and "discriminated against Plaintiff and the class in that they have  failed to make its facilities fully accessible to, and independently usable by, individuals who use wheelchairs." *Id.* ¶ 61. "Unless Defendant is restrained from continuing its ongoing and continuous course of conduct," Plaintiff concludes, "Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class." *Id.* ¶ 63.

Plaintiff filed a Complaint on June 18, 2019. ECF No. 1. Defendant filed a Motion to Dismiss Plaintiff's Complaint and Motion to Strike Class Claims on August 12, 2019. ECF No. 8. On October 21, 2019, the Court issued a Memorandum Opinion granting in part and denying

in part Defendant's Motion. ECF No. 16. The Court rejected Defendant's argument that Plaintiff lacked standing, finding sufficient his allegations of past injury at Defendant' facility and his intent to return there, but dismissed the class component of his claims because it was clear from the face of the Complaint that the proposed class would fail to satisfy the commonality requirement of Rule 23(a)(2). *Id.* at 7, 19.[3] The Court otherwise denied Defendant's Motion and made clear that its Order was without prejudice to Plaintiff's right to amend the Complaint, including its proposed class definition. ECF No. 17.

On November 4, 2019, Defendant filed an Answer to the Complaint. ECF No. 18. On December 16, 2019, Plaintiff filed a Motion for Leave to File First Amended Complaint, ECF No. 23, and attached a proposed amended pleading, ECF No. 23-2. Defendant filed an Opposition to the Motion for Leave on January 10, 2020, ECF No. 24, and Plaintiff filed a Response on February 7, 2020, supported by a declaration and exhibits. ECF No. 27. Defendant also filed a Notice of Supplemental Authority on March 16, 2020, ECF No. 28, to which Plaintiff responded on March 30, ECF No. 29.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)) (explaining that the plaintiff's proposed amendment was futile if the new claim it added would not have survived a Rule 12(b)(6) motion to dismiss).

To state a claim that survives a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court must also "draw all reasonable inferences in favor of the plaintiff." *Id.* at 253 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "[B]ut [the Court] need not accept the legal conclusions drawn from the facts, and . . . need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (first alteration in original) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

## III.  DISCUSSION

### A.  28 C.F.R. § 36.211

Defendant primarily argues that Plaintiff's Motion for Leave is futile because the

proposed Amended Complaint is premised on a non-viable theory of liability. Specifically, Defendant argues that Plaintiff's case relies on a mistaken interpretation of a U.S. Department of Justice ("DOJ") regulation implementing Title III of the ADA, 28 C.F.R. § 36.211, and that even if Plaintiff's interpretation is correct, a number of other obstacles prevent him from proceeding with such a claim. Plaintiff does not dispute that his case relies in part on § 36.211 but contests the meaning of the provision and Defendant's framing of his position. The Court accordingly considers § 36.211, as well as other components of the ADA statutory and regulatory framework that Plaintiff has raised.

As the Court described in its prior Memorandum Opinion in this case, "Title III of the ADA prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128 (2005) (citing 42 U.S.C. § 12182(a)). It specifically mandates, among other requirements, that "place[s] of public accommodation" must "remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), and "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford [any] goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities" unless doing so would "fundamentally alter the nature" of those features, *id.* § 12182(b)(2)(A)(ii).

"Place[s] of public accommodation" include "restaurant[s], bar[s], or other establishment[s] serving food or drink." *Id.* § 12181(7)(B). Such places are also required to "design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities," with exceptions not relevant here, *id.* § 12183(a)(1), and to ensure that any alterations to existing facilities are made "in such a

manner that, to the maximum extent feasible, the altered portions of the facility are readily

accessible to and usable by individuals with disabilities, including individuals who use

wheelchairs," *id.* § 12183(a)(2). A party alleging violations of any of these provisions may sue

for prospective injunctive relief. *Id.* § 12188(a). "Where appropriate," an injunction may require

"modification of a policy." *Id.* § 12188(a)(2). In the proposed Amended Complaint, Plaintiff

alleges that Defendant has violated 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(ii),

12182(b)(2)(A)(iv), and 12183(a), and accordingly seeks injunctive relief under § 12188(a). ECF

No. 23-2 ¶¶ 3–10, 50–64.

Plaintiff also invokes elements of the complex regulatory scheme that DOJ has

promulgated to implement Title III of the ADA. The U.S. Court of Appeals for the Tenth Circuit

has partly explained the structure of the framework:

> Congress authorized the Attorney General to promulgate regulations
> implementing the directives of Title III. [42 U.S.C.] § 12186(b). Within a
> year of the ADA's enactment, the DOJ issued regulations based on ADA
> Accessibility Guidelines published by the Architectural and
> Transportation Barriers Compliance Board. 28 C.F.R. pt. 36. These
> guidelines now appear in Appendix D to 28 C.F.R. part 36, "1991
> Standards for Accessible Design," or simply the "1991 Standards," *id.* §
> 36.104.
>
> In 2010, the DOJ revised its ADA regulations. Without abrogating the
> 1991 Standards, the DOJ promulgated new regulations—the "2010
> Standards"—that adopted newer ADA Accessibility Guidelines. *See id.*
> The 2010 Standards appear in Appendices B and D to 36 C.F.R. part 1191,
> and also include the requirements of subpart D of 28 C.F.R. part 36. *Id.*

*Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1217 (10th Cir. 2014).

Other appendices to 28 C.F.R. part 36 offer DOJ analysis of its Title III regulations and

the two sets of standards. Appendix A provides definitions and section-by-section analysis of

revisions to Part 36 published in 2010, 28 C.F.R. pt. 36, app. A; Appendix B contains analysis

and commentary on the 2010 Standards, *id.* pt. 36, app. B; and Appendix C offers section-by-

section analysis of DOJ's original Title III regulations enacted in 1991, *id.* pt. 36, app C. Finally, in addition to the 1991 Standards, the 2010 Standards, the 1991 Title III regulations, the 2010 update to those regulations, and the analysis and commentary on the regulations, DOJ has also "promulgated a Technical Assistance Manual to set out the requirements under the ADA." *Wood v. Md. Dep't of Transp.*, 732 F. App'x 177, 183 (4th Cir. 2018) (quoting *Slager v. Duncan*, 162 F.3d 1155 (4th Cir. 1998) (table decision)). The Technical Assistance Manual "is persuasive guidance on how to interpret the ADA." *Id.* (citing *Slager*, 162 F.3d at 1155); *see also Fortyune v. City of Lomita*, 766 F.3d 1098, 1103 (9th Cir. 2014) (discussing the Manual).

Plaintiff draws on several of these authorities in the proposed Amended Complaint and the Motion for Leave. First, Plaintiff cites the 1991 Standards and 2010 Standards establishing maximum slopes for parking spaces, access aisles, and curb slopes. ECF No. 27 at 17 nn.1–2. The 1991 Standards state that "accessible . . . [p]arking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions," 28 C.F.R. pt. 36, app. D, § 4.6.3, and further direct that "[t]he maximum slope of a ramp," defined as "[a]ny part of an accessible route with a slope greater than 1:20," is "1:12," *id.* §§ 4.8.1–4.8.2. The 2010 Standards slightly relax the 1991 Standards' requirement for parking spaces and access aisles, setting a maximum slope of "1:48," 36 C.F.R. pt. 1191, app. D § 502.4, and continue the "1:12" maximum slope for curb ramps, *id.* § 405.2. The 2010 Standards also direct that "[a]t least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve." 36 C.F.R. pt. 1191, app. B § 206.2.1; *see also id.* § 206.1.

Plaintiff also cites 28 C.F.R. §§ 36.302(a) and 36.304(a), which echo the reasonable modification and barrier removal requirements of 42 U.S.C. § 12182(b)(2)(A)(ii) and

12182(b)(2)(A)(iv), respectively; 28 C.F.R. § 36.402, which concerns alterations to existing facilities and reinforces 42 U.S.C. § 12183(a)(2); and 28 C.F.R. § 36.406, which generally requires compliance with the 1991 Standards or 2010 Standards. Finally, Plaintiff points to 28 C.F.R. § 36.211, which in relevant part mandates that "[a] public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." 28 C.F.R. § 36.211(a); *see* ECF No. 23-2 ¶¶ 50(c), 55.

According to Plaintiff, § 36.211 imposes on places of public accommodation an ongoing duty to examine the accessible features of their facilities, including parking spaces, access aisles, and curb ramps, and to remediate any failures to comply with the ADA with respect to such features. ECF No. 27 at 17, 19–20. Relying on this interpretation, Plaintiff alleges that Defendant has a maintenance policy for its facilities that is centrally issued and directed, but that because the policy does not require Defendant to uphold its alleged obligation under § 36.211 to maintain the accessible features of its facilities, Defendant is liable for violating the ADA. *Id.* at 5–6, 20.

Defendant responds that it is untenable for several reasons to interpret § 36.211 as requiring Title III entities to establish a policy of proactively monitoring and maintaining accessibility features. ECF No. 24 at 2–3. Defendant first argues that the text of § 36.211 "undermines the sweeping obligation that Plaintiff seeks to fabricate under this regulation." *Id.* at 8. According to Defendant, while § 36.211(a) "does impose an obligation to 'maintain . . . features of facilities and equipment' 'in operable working condition,' it in no way suggests an affirmative duty to proactively inspect for barriers to access and remedy them promptly." *Id.* at 9 (citation omitted). In support, Defendant points to two recent district court decisions that accepted Defendant's reading of § 36.211 and rejected Plaintiff's interpretation.

10

Defendant first highlights *Mielo v. Steak 'N Shake Operations, Inc.*, No. 15-180, 2019 WL 1330836 (W.D. Pa. Mar. 25, 2019). The plaintiffs in *Mielo*, like Plaintiff here, were wheelchair users who allegedly encountered excessively steep slopes when using purportedly accessible parking spaces, access aisles, and ramps in the parking lot of two of the defendant's restaurants. *Id.* at *1–*2. The *Mielo* plaintiffs also relied on § 36.211, and the defendant raised the argument that the provision "in no way suggests an affirmative obligation to seek out any and all barriers to access and repair them." *Id.* at *6. In assessing the parties' positions, the court framed the question at issue as "whether the ADA or its regulations place a burden on Steak 'N Shake to seek out and find . . . compliance issues or whether Steak 'N Shake is obligated to act only when alerted to their existence." *Id.* at *7. This formulation reflected the parties' agreement that the defendant would have a duty to remedy specific issues brought to its attention. *Id.*

The court ultimately agreed with the defendant, stating that "the wording of Section 211 simply does not support the burden [the plaintiffs] wish to place on Steak 'N Shake." *Id.* While the court rejected some components of the defendant's textual arguments, it nonetheless found that a public accommodation can fulfill any ADA duties to maintain accessible facilities merely by taking action "when it finds problems or when problems are brought to its attention, which is not the same proposition as requiring it to create a policy to inspect for such problems." *Id.* at *8. "[The plaintiffs'] argument fails when they attempt to place the burden to inspect for such potential issues on the public accommodation, a position that is not supported anywhere in the statute or regulations," the court concluded. *Id.*

The court in *Mielo* was particularly swayed by two authorities that the defendant had cited. First, the court noted that in its regulations for state and local government entities subject to Title II of the ADA, DOJ required that each such entity perform a self-evaluation of its

11

"current services, policies and practices," *id.* (quoting 28 C.F.R. § 35.105(a)), and then develop a transition plan setting forth steps necessary if structural changes to facilities were required in order to comply with the ADA, *id.* (citing 28 C.F.R. § 35.150(d)(1)). However, "Section 211 contains no such language," the court observed, accepting the defendant's argument that the contrast between the provisions undermined the plaintiffs' attempt to read a similar affirmative obligation into § 36.211. *Id.* at *6, *8.

The court also noted a passage from DOJ's section-by-section analysis of the 1991 Title III regulations addressing 28 C.F.R. § 36.304, which as noted previously generally requires public accommodations to remove architectural barriers in existing facilities. *Id.* at *8. DOJ's analysis indicates the agency's understanding of the scope of covered entities' obligations:

> Although the obligation to engage in readily achievable barrier removal is clearly a continuing duty, the Department has declined to establish any independent requirement for an annual assessment or self-evaluation. It is best left to the public accommodations subject to § 36.304 to establish policies to assess compliance that are appropriate to the particular circumstances faced by the wide range of public accommodations covered by the ADA. However, even in the absence of an explicit regulatory requirement for periodic self-evaluations, the Department still urges public accommodations to establish procedures for an ongoing assessment of their compliance with the ADA's barrier removal requirements. The Department recommends that this process include appropriate consultation with individuals with disabilities or organizations representing them. A serious effort at self-assessment and consultation can diminish the threat of litigation and save resources by identifying the most efficient means of providing required access.

28 C.F.R. pt. 36, app. C., § 36.304. The court in *Mielo* found that the "plain language of this guidance" made clear that "the DOJ does not impose any independent requirement for assessment or self-evaluation" on Title III entities. *Mielo*, 2019 WL 1330836, at *9. The court reasoned that "[i]f a public accommodation allows conditions to deteriorate to the point that an individual with a disability is deterred or denied access, that individual can sue for an ADA

violation, but this does not mean that the public accommodation is also independently liable for failing to notice the condition in the first place." *Id.*

Finally, the court looked to a decision earlier in the same case by the Third Circuit, which had reversed and remanded the lower court's certification of a class. *See id.* at *3, *9. The Third Circuit had noted the plaintiffs' position concerning § 36.211 and concluded that "it appears to be in tension with the very policy which Congress codified in the text of the ADA," namely its directive at 42 U.S.C. § 12181(9) that assessments of whether a particular access violation is unlawful and whether modifications are "readily achievable" should consider the nature and cost of an accommodation and the financial resources of the facility involved. *Id.* at *9–*10 (quoting *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 478 n.10 (3d Cir. 2018)).

Defendant here also points to *Murphy v. Aaron's, Inc.*, No. 19-cv-00601-CMA-KLM, 2019 WL 5394050 (D. Colo. Oct. 22, 2019). Similar to *Mielo* and this case, the plaintiff in *Murphy* was a wheelchair user who alleged unnecessary difficulty and risk navigating a "protruding curb ramp in excess of applicable ADA regulations" and argued that the defendant "lease-to-own business" was required by § 36.211 to "implement a proactive policy to maintain accessible features." *Id.* at *1, *4. The court agreed with the defendant and held that "the ADA does not require non-governmental public accommodations to implement proactive policies." *Id.* at *4. While the court acknowledged the "maintain in operable working condition" language of § 36.211, it looked to DOJ's 1991 commentary on § 36.304 and highlighted DOJ's explanation that it was not requiring public accommodations to establish independent requirements for annual assessments or self-evaluation. *Id.* (citing 28 C.F.R. pt. 36, app. C., § 36.304).

The court also looked to the DOJ's Technical Assistance Manual for Title III, which similarly states that "[t]he Department's regulation," referring to 28 C.F.R. §§ 36.301–310, "does

13

not require public accommodations to conduct a self-evaluation," although "public accommodations are urged to establish procedures for an ongoing assessment of their compliance with the ADA's barrier removal requirements." U.S. Dep't of Justice, Americans with Disabilities Act: ADA Title III Technical Assistance Manual § III-4.4500, https://www.ada.gov/taman3.html. Considering the Manual and the DOJ's 1991 commentary together, the court concluded that "the ADA allows Defendant to make repairs when problems are brought to its attention, rather than requiring it to implement a proactive policy and seek out repairs in the manner that Plaintiff demands." *Murphy*, 2019 WL 5394050, at *4.

Defendant here presents the same arguments that succeeded in *Mielo* and *Murphy*, pointing to the 1991 analysis of § 36.304, § III-4.4500 of the Technical Assistance Manual, the distinction between the Title II and Title III regulations with respect to ongoing obligations of covered entities, and the Third Circuit's analysis of Congress's intent with Title III, as expressed through the definition of "readily achievable." ECF No. 24 at 9–12. Plaintiff cites two authorities in response. First, Plaintiff points to a 2008 Notice of Proposed Rulemaking ("NPRM") by DOJ that preceded the 2010 revisions to the 1991 regulations. ECF No. 27 at 20 (citing Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34508, 34523 (June 17, 2008)).

While the NPRM states that § 36.211(a) is unchanged in the proposed revisions, it explains that "[t]he Department has noticed that some covered entities do not understand what is required by § 36.211, and it would like to take the opportunity presented by this NPRM to clarify." 73 Fed. Reg. at 34523. The NPRM continues:

> Section 36.211(a) broadly covers all features that are required to be accessible under the ADA, from accessible routes and elevators to roll-in showers and signage. It is not sufficient for a building or other feature to

be built in compliance with the ADA, only to be blocked or changed later
so that it is inaccessible.

*Id.* Quoting this passage, Plaintiff argues that the NPRM provides an "unambiguous declaration"
that "directly defeats Defendant's argument" for the reading of § 36.211 that the courts in *Mielo*
and *Murphy* accepted. ECF No. 27 at 21. According to Plaintiff, Defendant's discussion of
§ 36.304 and related commentary conflates the lack of a requirement to proactively self-monitor
for architectural barriers, removal of which is the subject of § 36.304, with the obligation to
maintain accessibility features, the focus of § 36.211. Attempting to underscore the contrast,
Plaintiff offers a quotation from the 1991 DOJ commentary on § 36.211, which states that the
section "recognizes that it is not sufficient to provide features such as accessible routes,
elevators, or ramps, if those features are not maintained in a manner that enables individuals with
disabilities to use them." ECF No. 27 at 21 (citing 28 C.F.R. pt. 36, app. C., § 36.211).

The decisions in *Mielo* and *Murphy* do not appear to have considered the authorities
Plaintiff cites here. Nonetheless, even taking these materials into account, the Court agrees with
the conclusions of *Mielo* and *Murphy* with respect to the meaning of § 36.211. The Court reaches
this finding on several grounds. First, there is undoubtedly a consistent theme across DOJ's
interpretations of the Title III regulations, as recognized in *Mielo* and *Murphy*: covered entities
are urged but not required to establish ongoing inspection and assessment policies. To be sure,
Plaintiffs are correct that the analysis containing this encouragement concerns removal of
architectural barriers – defined at § III-4.4100 of the Technical Assistance Manual as "physical
elements of a facility that impede access by people with disabilities" – rather than maintenance
and upkeep of accessible features that entities have installed. ECF No. 27 at 21. Nonetheless,
DOJ's general approach and expectation toward public accommodations' ongoing obligations

under the ADA, or lack thereof, is evident from the agency's analysis of the architectural barrier regulations, as *Mielo* and *Murphy* recognized.

Second, while there are some indications of an ongoing maintenance obligation for accessible features in the text of § 36.211 and the interpretive authorities Plaintiff has cited, the reading of these materials that Plaintiff urges is ultimately unsupported. With respect to the 2008 NPRM, the portion Plaintiff has excerpted continues as follows:

> A common problem observed by the Department is that covered facilities do not maintain accessible routes. For example, the accessible routes in offices or stores are commonly obstructed by boxes, potted plants, display racks, or other items so that the routes are inaccessible to people who use wheelchairs. Under the ADA, the accessible route must be maintained and, therefore, these items are required to be removed. If the items are placed there temporarily—for example, if an office receives multiple boxes of supplies and is moving them from the hall to the storage room— then § 36.211(b) excuses such "isolated or temporary interruptions." Other common examples of features that must be maintained, and often are not, are platform lifts and elevators. Public accommodations must ensure that these features are operable and, to meet this requirement, regular servicing and making repairs quickly will be necessary.

73 Fed. Reg. at 34523. While neither Plaintiff nor the NPRM elaborate on the meaning of "accessible route," the 1991 Standards define the phrase as "[a] continuous unobstructed path connecting all accessible elements and spaces of a building or facility" and state that accessible routes may be exterior as well as interior. 28 C.F.R. pt. 36, app. D, § 3.5. "Interior accessible routes may include corridors, floors, ramps, elevators, lifts, and clear floor space at fixtures," while "[e]xterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts." *Id.*

Apparently incorporating these definitions into his argument, Plaintiff argues that the NPRM "unambiguous[ly]" declares that entities must adopt proactive maintenance policies, presumably for both interior and exterior accessible routes among other features. ECF No. 27 at

16

21. This claim is unpersuasive. As an initial matter, the NPRM says nothing about adoption of affirmative maintenance policies. That stands in contrast to DOJ's urging in the Technical Assistance Manual and in its commentary on the 1991 regulations that covered entities should establish procedures to continually assess their barrier removal compliance. *See* U.S. Dep't of Justice, Americans with Disabilities Act: ADA Title III Technical Assistance Manual § III-4.4500; 28 C.F.R. pt. 36, app. C., § 36.304. An obligation to adopt a policy with respect to § 36.211 maintenance is not only not recommended, but not even contemplated, in the NPRM. And notably, DOJ's 1991 commentary on § 36.211, the second authority Plaintiff cites, explicitly rejected the inclusion in § 36.211 of "specific requirements for inspection and maintenance of equipment, for training staff in the proper operation of equipment, and for maintenance of specific items." 28 C.F.R. pt. 36, app. C., § 36.211. Instead, DOJ stated that it "believes that this section properly establishes the general requirement for maintaining access and that further, more detailed requirements are not necessary." *Id.*

An additional issue further weakens Plaintiff's position. The language Plaintiff highlights in the 2008 NPRM indicates that DOJ had two primary concerns leading it to clarify the meaning of § 36.211: items blocking accessible routes, and non-functioning electric and mechanical accessibility features like elevators and lifts. *See* 73 Fed. Reg. at 34523. The NPRM does not mention exterior features. Instead, DOJ's apparent concern with respect to § 36.211 was that entities were obstructing accessible routes with items like potted plants and display racks and were failing to service commonly used interior accessibility devices. *See id.* And these focuses in the agency's 2008 discussion are consistent with its 1991 analysis of § 36.211 as well. After stating in the passage that Plaintiff cites that accessible features must be "maintained in a manner that enables individuals with disabilities to use them," the 1991 analysis specified that

"[i]noperable elevators, locked accessible doors, or 'accessible' routes that are obstructed by furniture, filing cabinets, or potted plants are neither 'accessible to' nor 'usable by' individuals with disabilities." 28 C.F.R. pt. 36, app. C., § 36.211.

It thus appears reasonably clear that the focus of § 36.211 is objects blocking accessible routes and malfunctioning lifts and elevators.[4] Further supporting this conclusion is that the decisions Plaintiff cites that expressly address § 36.211 claims almost uniformly concern these issues. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1007–10 (9th Cir. 2015) (addressing a § 36.211 claim concerning obstructions blocking store aisles and a sales counter); *Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1111 (N.D. Cal. 2017) (addressing obstructions blocking a cafe's sales counter and the route to the restroom); *Curtis v. Home Depot U.S.A., Inc.*, No. 1:13-cv-1151 AWA GSA, 2015 WL 351437, at *1 (E.D. Cal. Jan. 23, 2015) (addressing merchandise obstructing the accessible route in a store's entryway); *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 857–58 (N.D. Cal. 2011) (raising § 36.211 in addressing claims concerning movable trash cans obstructing restroom access). Plaintiff conspicuously does not address *Mielo* or *Murphy*. And what appears to be the only case Plaintiff cites that accepted his interpretation and applied it to exterior accessible routes, *Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 14-1455, 2016 WL 2347367 (W.D. Pa. Jan. 27, 2016), was later criticized in

---

[4] The Court's discussion has generally assumed that DOJ publications interpreting the agency's regulations are a source of meaningful authority as to the regulations' meaning. Courts have followed the same path with respect to ADA regulations in private litigation in the past. *See Fortyune*, 766 F.3d at 1104 (stating that DOJ's interpretation of its ADA implementing regulations is entitled to controlling weight unless it is plainly erroneous or inconsistent with the regulation). Such decisions have cited the doctrine of *Auer* deference, which holds that in general, "[a]n agency's interpretation of its own regulations is entitled to deference." *Id.* (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). Recently, however, the U.S. Supreme Court clarified and somewhat cabined the scope of *Auer* deference, explaining that "the possibility of deference can arise only if a regulation is genuinely ambiguous . . . even after a court has resorted to all the standard tools of interpretation." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019). Because the parties here appear to agree on the authoritativeness of DOJ's analyses and differ only as to which publications the Court should look to and how they should be read, it does not appear necessary to further discuss the interpretive weight of such materials, though the Court notes that the agency's commentaries certainly "implicate its substantive expertise," one of the requirements for deference that the Supreme Court identified in *Kisor*. 139 S. Ct. at 2417.

*Mielo* – which was authored by the same judge – in light of the Third Circuit's reversal of the judge's certification of a class in *Mielo*. *See Mielo*, 2019 WL 1330836, at *13.

Finally, even if the Court were to accept Plaintiff's argument about the general meaning of § 36.211 – that it requires proactive inspections of exterior accessible routes and similar features to determine if they have fallen out of compliance with the ADA – that still would not equate to a requirement that public accommodations adopt formal policies codifying such an obligation. There is a clear conceptual distinction between the imposition of a general ongoing duty to maintain accessible features and a requirement that entities create and enforce a policy reflecting and requiring adherence to that obligation. For all of these reasons, Plaintiff's effort to bootstrap a largely unsupported and somewhat strained reading of § 36.211 into a sweeping obligation to adopt affirmative inspection and maintenance policies is unavailing.

The Court thus concludes that to the extent Plaintiff's claims are based on Defendant's purported violation of § 36.211, such claims must be dismissed because § 36.211 does not create an obligation that Defendant can breach. The Court accordingly need not consider the franchise agreement and other materials allegedly created by Defendant that Plaintiff has offered in support of his policy-based claims. ECF Nos. 27-2, 27-3, 27-4, 27-5. Nor does the Court need to address other arguments Defendant has raised concerning § 36.211, including that Plaintiff's interpretation would violate Defendant's due process rights, that the provision does not create a private cause of action, and that Plaintiff would lack standing to bring such a claim if a cause of action existed. ECF No. 24 at 3.

**B.  Individual Claim**

The Court thus turns to considering what remains of the proposed Amended Complaint without § 36.211. First, despite the non-viability of Plaintiff's allegations that Defendant

unlawfully failed to adopt a proactive maintenance policy, the Court finds that Plaintiff has made out an individual claim for violation of his rights under the ADA statutory provisions he has cited. To state a claim under Title III of the ADA, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against him because of his disability." *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 670–71 (4th Cir. 2019).

In the proposed Amended Complaint, Plaintiff alleges that he is "paralyzed from the waist down," leaving him substantially limited in major life activities involving mobility, which is consistent with the ADA's definition of "disability" at 42 U.S.C. § 12102. ECF No. 23-2 ¶¶ 12, 14, 16, 45. He further alleges that Defendant owns the Germantown restaurant where he encountered purportedly accessible curb ramps with slopes exceeding 9.8 percent, which Plaintiff characterizes as "architectural barriers" that Defendant has failed to remove as required by 42 U.S.C. § 12182(b)(2)(A)(iv). ECF No. 23-2 ¶¶ 27(a), 46, 56–57. As a result, Plaintiff alleges that Defendant has denied him full and equal enjoyment of its facilities and discriminated against him in violation of 42 U.S.C. § 12182. *Id.* ¶ 47–49, 59–61. These allegations appear sufficient to state a claim for individual disability discrimination in violation of the ADA.

In asserting that the proposed Amended Complaint is entirely futile, Defendant does not directly contend that Plaintiff has failed to state an individual claim, but rather argues that Plaintiff has only asserted injury resulting from "inadequate policies, practices or procedures." ECF No. 24 at 18 (quoting ECF No. 23-2 ¶ 3). Defendant insists that "[a]ny attempt by Plaintiff to deny that the basis of his claim is rooted in Section 211 is simply misleading," citing passages from the introduction of the proposed Amended Complaint in which Plaintiff asserts that the excessive slopes he encountered were the result of Defendant's inadequate policies. ECF No. 24

at 18–19 n.2 (citing ECF No. 23-2 ¶ 3). Defendant also notes the introduction's statement that Plaintiff brings this action to compel Defendant to modify its existing policies so that access barriers do not reoccur at Defendant's facilities. *Id.* (citing ECF No. 23-2 ¶¶ 5–6).

Defendant's position is overstated, as Plaintiff correctly notes in his Response. ECF No. 27 at 7, 23 (citing ECF No. 23-2 ¶ 7). While § 36.211 is an important component of the proposed Amended Complaint, the pleading also asserts an individual claim that Defendant. Setting aside the allegations that concern Defendant's policies, the introduction describes Plaintiff's individual injury – experiencing difficulty and risk of harm due to excessive sloping in the Germantown parking lot – and explains that Plaintiff seeks to compel Defendant not only to change its policies, but also to remove access barriers. ECF No. 23-2 ¶¶ 3, 5, 6. The proposed Amended Complaint's Prayer for Relief reflects both components of the pleading by seeking a declaratory judgment that Defendant has violated specific Title III requirements and a permanent injunction directing Defendant to remove the architectural barriers the pleading describes, as well as to modify its policies. *Id.* at 15–16.

In short, Defendant has not offered persuasive grounds for dismissal of the proposed Amended Complaint's individual claim, and the claim does not otherwise appear subject to dismissal at this stage. Accordingly, the Court concludes that the proposed amendment is not futile and that it states at least an individual claim for discrimination under the ADA. The Court thus turns to the class component of the proposed Amended Complaint, its remaining element, to assess whether it is supportable without § 36.211.

### C.  Class Allegations

Defendant argues that the class element of Plaintiff's case relies entirely on his inaccurate interpretation of § 36.211 and that Plaintiff therefore cannot satisfy the requirements for class

certification under Federal Rule of Procedure 23(a) or 23(b). As the Court explained in its prior Memorandum Opinion, class allegations should generally be rejected before the completion of discovery only when it is apparent from the face of the complaint that "the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008); *John v. Nat. Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4th Cir. 1978) (identifying "the normal practice that requires the district court to consider more than merely the allegations contained in the complaint in cases in which the complaint on its face does not justify dismissal of the class aspect"). The guidelines for making this assessment are provided by the familiar standard of review for motions to dismiss under Rule 12(b)(6). *Blihovde v. St. Croix Cty.*, 219 F.R.D. 607, 613–14 (W.D. Wis. 2003); *see also Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 655 (D. Nev. 2009).

To be clear, the plaintiff retains the ultimate burden of demonstrating that the requirements for certification are met in a class action. *See Vinole*, 571 F.3d at 940. But when a defendant files a pre-discovery challenge to class certification "on the basis of the allegations in the complaint only," the standard of review "is the same as a motion to dismiss for failure to state a claim." *Blihovde*, 219 F.R.D. at 614. In other words, a motion to dismiss a complaint's class allegations should be granted when it is clear from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification because the plaintiff has "fail[ed] to properly allege facts sufficient to make out a class" or "could establish no facts to make out a class." *Bessette v. Avco Fin. Servs.*, 279 B.R. 442, 450 (D.R.I. 2002).

Under Rule 23's requirements for class certification, district courts are granted "wide discretion" in deciding whether to certify a class. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164,

179 (4th Cir. 2010) (quoting *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993)). Rule 23(a) requires that a prospective class "comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (citing Fed. R. Civ. P. 23(a)). "[N]umerosity requires that a class be so large that 'joinder of all members is impracticable.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting Fed. R. Civ. P. 23(a)(1)).

"Commonality requires that 'there are questions of law or fact common to the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(2)). For this requirement to be met, the proceeding must not only raise common questions, but must also be able "to generate common *answers* apt to drive the resolution of the litigation." *EQT Prod. Co.*, 764 F.3d at 360 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart*, 255 F.3d at 146 (quoting *Falcon*, 457 U.S. at 156). Finally, "[u]nder the adequacy requirement of Rule 23(a)(4), a district court may certify a class only if the class representative 'will fairly and adequately protect the interests of the class.'" *Ward*, 595 F.3d at 179 (quoting Fed. R. Civ. P. 23(a)(4)).

In addition to satisfying the requirements of Rule 23(a), "the class action must fall within one of the three categories enumerated in Rule 23(b)." *EQT Prod. Co.*, 764 F.3d at 357 (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003)). Plaintiff here invokes Rule 23(b)(2). ECF No. 23-2 ¶ 36–41. "Rule 23(b)(2) authorizes class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole.'" *EQT Prod. Co.*, 764 F.3d at 357 (quoting Fed. R. Civ. P. 23(b)(2)). "As the Supreme Court has instructed, '[t]he key to the (b)(2) class is the indivisible nature of the . . . remedy warranted.'" *Id.* (alteration in original) (quoting *Dukes*, 564 U.S. at 360). "Certification under this provision is appropriate 'only when a single injunction or declaratory judgment would provide relief to each member of the class.'" *Id.* (quoting *Dukes*, 564 U.S. at 360). "It is [the plaintiff's] burden to demonstrate compliance with Rule 23, but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied.'" *Id.* (citing *Dukes*, 564 U.S. at 351).

The class definition Plaintiff has offered in the proposed Amended Complaint establishes the following putative class:

> All wheelchair users with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any Potomac Family Dining Operatinf [sic] Group, LLC dba Applebee's location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendant's failure to comply with the ADA's slope regulations within the purportedly accessible Parking Areas of its facilities.

ECF No. 23-2 ¶ 36. Defendant contends that Plaintiff cannot satisfy the commonality, typicality, or adequacy requirements of Rule 23(a) for this proposed class, nor the requirements of Rule 23(b)(2).

Defendant first argues that there are no legal or factual questions common to the class that can generate common answers, preventing Plaintiff from satisfying commonality. ECF No. 24 at 20, 23. In response, Plaintiff states that "[t]here is a single factual question common to the class: whether and to what extent [Defendant's] policies, practices, and procedures have failed to identify, maintain, and promptly remediate ADA's slope regulations within [Defendant's] parking spaces, access aisles, and curb ramps." ECF No. 27 at 28. Plaintiff further explains that

"it appears [Defendant] applies a uniform set of maintenance policies to its restaurants," and that if discovery reveals that "those policies fail to maintain accessible features, and fail to detect and remedy ADA violations, then class members who were exposed to accessibility barriers have suffered the same injury." *Id.*

With these statements, Plaintiff concedes that the commonality of his proposed class is premised solely on his § 36.211 theory. Because that theory is not viable, Plaintiff cannot satisfy the commonality requirement, nor state an actionable claim for relief on behalf of the class. No further analysis is needed to conclude that Plaintiff "could establish no facts to make out a class" and that dismissal of the class component of the proposed Amended Complaint is therefore appropriate. *Bessette*, 279 B.R. at 450. And this conclusion is undisturbed by the primary case Plaintiff cites for his position, *Hernandez v. AutoZone, Inc.*, 323 F.R.D. 496 (E.D.N.Y. 2018). The court there certified a Rule 23(b)(2) class of mobility impaired customers of the defendant business who sought an injunction to remedy alleged violations of Title III of the ADA and its implementing regulations in the defendant's parking lots and walkways. *Id.* at 498. As in this case, the plaintiff relied in part on the claim that § 36.211 imposed an ongoing duty to inspect and remedy accessibility barriers, an argument the defendant "devote[d] several pages of its Opposition" to certification to refuting. *Id.* at 503.

Despite this focus by the defendant, the court in *Hernandez* declined to resolve the § 36.211 question at the class certification stage, explaining in a footnote that "[t]his argument is more properly raised in a motion to dismiss under Rule 12(b)(6) or 12(c) or a motion for summary judgment under Rule 56" and stating that the court "considers the argument here only to the extent that it impacts class certification." *Id.* at 501 n.4. To that end, the court found that "[w]hether Title III and Section 211 require AutoZone to take reasonable measures to identify

and remove accessibility barriers that arise as a result of natural deterioration is a common question of law, the resolution of which will resolve a central issue of the class 'in one stroke.'" *Id.* at 503 (quoting *Dukes*, 564 U.S. at 350). The defendant's argument about § 36.211, the court reasoned, "simply underscores the existence of a common question of law." *Id.*

Here, however, the Court has answered that question in the negative. Because his § 36.211 theory is the sole basis on which Plaintiff premises the commonality of his proposed class, as well as its typicality, *see* ECF No. 27 at 28, Plaintiff cannot meet the requirements for certification as a matter of law. Having reached this conclusion, the Court need not address Defendant's remaining arguments concerning certification and will dismiss the class component of the proposed Amended Complaint. As a result, while Plaintiff's Motion for Leave will be granted in part, Plaintiff may proceed with only an individual action to address the ADA violations he has allegedly encountered at Defendant's Germantown restaurant.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File First Amended Complaint, ECF No. 23, will be granted in part and denied in part. Plaintiff may proceed with the individual claim of discrimination set forth in his First Amended Nationwide Class Action Complaint, ECF No. 23-2, but all aspects of the proposed amended pleading that are premised on Defendant's alleged violation of 28 C.F.R. § 36.211, including the class component, will be dismissed. A separate Order shall issue.


Date: July 21, 2020                                    /s/_____
                                                       GEORGE J. HAZEL
                                                       United States District Judge